UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| FRANK DANIEL THOMAS, | No. ED CV 12-1241-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on August 3, 2012, seeking review of the Commissioner's denial of his applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on August 29, 2012, and August 30, 2012. Pursuant to the Court's Order, the parties filed a Joint Stipulation on May 20, 2013, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on September 16, 1979. [Administrative Record ("AR") at 63.] He has a high school education [AR at 156] and past relevant work experience as a convenience store clerk, a cook and bartender, a dishwasher and food preparation worker, a fast food cashier, a warehouse worker, and a grocery store worker. [AR 157, 166-76.]

On December 18, 2009, plaintiff filed his application for Disability Insurance Benefits and protectively filed his application for Supplemental Security Income payments, alleging that he has been disabled since September 4, 2009, due to epilepsy, back problems, and soreness in his legs and knees. [AR at 63-70, 132-46, 154-64, 181-86.] After his applications were denied initially and upon reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 67-82.] A hearing was held on April 12, 2011, at which time plaintiff appeared without counsel and testified on his own behalf. A third party witness and a vocational expert also testified. [AR at 23-62.] On April 29, 2011, the ALJ determined that plaintiff was not disabled. [AR at 7-15.] On June 6, 2012, the Appeals Council denied plaintiff's request for review. [AR at 1-3, 21.] This action followed.

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well

as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A.    THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled

1  and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform
2  past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie
3  case of disability is established. The Commissioner then bears the burden of establishing that
4  the claimant is not disabled, because he can perform other substantial gainful work available in
5  the national economy. The determination of this issue comprises the fifth and final step in the
6  sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966
7  F.2d at 1257.

**B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ concluded that plaintiff has not engaged in any substantial gainful activity since his alleged disability onset date, September 4, 2009. [AR at 9.][1] At step two, the ALJ concluded that plaintiff has the severe impairments of: "degenerative disk disease of his spine with stenosis and [a] history of seizures." [Id.] At step three, the ALJ concluded that plaintiff does not have an impairment or combination of impairments that meets or equals any of the impairments in the Listing. [AR at 10.] The ALJ further found that plaintiff retains the residual functional capacity ("RFC")[2] to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a),[3] but that he has the following additional limitations: "[He] must have seizure precautions which include no work at heights or open machinery, he cannot drive or work around bodies of water. No bending or twisting at his waist. He has to lie down during his lunch break and will miss work twice a month. No ladders or uneven surfaces for walking. No crouching or crawling. He must sit strai[gh]t on a chair with a back cushion. No rapid standing up. He can sit

---

[1]   The ALJ concluded that plaintiff meets the insured status requirements of the Social Security Act through December 31, 2014. [AR at 9.]

[2]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[3]   "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. §§ 404.1567(a), 416.967(a).

for 20 to 30 minutes at one time then he needs to stand and stretch for a minute. [He] is limited to lifting 10 pounds or less." [Id.] At step four, the ALJ concluded that plaintiff is unable to perform any past relevant work. [AR at 13.] At step five, the ALJ found, based on the vocational expert's testimony and the application of the Medical-Vocational Guidelines, that there are jobs that exist in significant numbers in the national economy that plaintiff can perform. [AR at 14.] Accordingly, the ALJ found that plaintiff was not under a disability from September 4, 2009, through April 29, 2011, the date of the decision. [AR at 15.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ improperly: (1) determined plaintiff's residual functional capacity, and (2) discounted plaintiff's credibility and the credibility of a lay witness. [Joint Stipulation ("JS") at 3-4.] As set forth below, the Court agrees with plaintiff and remands for the award of benefits.

### A. PLAINTIFF'S SUBJECTIVE SYMPTOM TESTIMONY

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if the claimant meets the first test, the ALJ may only reject the claimant's testimony about the severity of his symptoms upon (1) finding evidence affirmatively suggesting that the claimant was malingering, or (2) offering specific, clear and convincing reasons for doing so. See Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1999); see also Lingenfelter, 504 F.3d at 1036; Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's

testimony and his conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c). If properly supported, the ALJ's credibility determination is entitled to "great deference." See Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

Plaintiff described how his impairments affect his ability to function in a January 10, 2010, Exertional Daily Activities Questionnaire [AR at 177-79] and at his April 12, 2011, administrative hearing. Plaintiff stated that he has difficulty sitting and standing due to his back pain; he can only stand for ten or fifteen minutes at a time; and he can only sit for twenty to thirty minutes at a time. [AR at 36-37, 177.] He testified that the only relief he receives from his back pain is when he lies down, and even then, "it's not much" relief. [AR at 34.] He also stated that he cannot walk very far, stating "I walk to car and from car to house." [AR at 177.] He testified that bending and twisting aggravate his pain, which makes it painful to get dressed, take a shower, and bathe. [AR at 38.] Plaintiff stated that when he performs chores, he must "do [them] in shifts," and that he can only drive short distances. [AR at 178.] When the ALJ asked plaintiff whether he could perform a job where he could alternate at will between sitting and standing, and where he would never have to lift more than a gallon of milk, plaintiff testified, "I wouldn't be able to do it at all," stating, "I can't be on my feet, and I can't even sit down." [AR at 45-46.] Plaintiff stated that his impairments have steadily worsened since September of 2009. [AR at 46.]

At step one of the two-step credibility analysis, the ALJ found that plaintiff's "medically determinable impairment could reasonably be expected to cause the alleged symptoms." [AR at 12.] The ALJ nevertheless concluded that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's RFC findings for plaintiff]." [Id.] Thus, at step two, as the record

contains no evidence of malingering by plaintiff,[4] the ALJ was required to offer "specific, clear and convincing reasons" for rejecting his subjective symptom testimony. See Lingenfelter, 504 F.3d at 1036. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (quoting Lester, 81 F.3d at 834); see also Dodrill, 12 F.3d at 918.

It appears that the ALJ rejected plaintiff's subjective symptom testimony because: (1) "[t]he degree of limitations alleged by [plaintiff] are not supported by his records"; (2) "[i]n April 2010, [plaintiff] requested to cease treatment with Dr. Helland for reasons unknown"; and (3) "[plaintiff's] treatment providers have not opined that [he] requires greater work restrictions than those in the residual functional capacity herein." [AR at 12.]

First, in stating that "[t]he degree of limitations alleged by [plaintiff] are not supported by his records," the ALJ cited the following evidence: a September 10, 2009, MRI that revealed "partial sacralization of L5" and "mild degenerative disc changes of the lower two lumbar levels, most pronounced at L4-5" [AR at 217]; a February 2, 2010, physical examination performed by spine specialist Dr. Steven W. Helland that demonstrated "point tenderness right greater than left L5-S1 and L4-5, painful and limited range of motion, and positive [straight leg raising] on the left at 40 degrees" [AR at 236-40]; a February 10, 2010, MRI indicating "[d]iscogenic change involving the L4-L5 [disc] with a small subligamentous [herniated nucleus pulposus] on the right at L4-L5 approaching absolute spinal stenosis" [AR at 295-96[5]]; a March 9, 2010, MRI of plaintiff's cervical spine, which revealed "[s]traightening of the normal lordosis with minimal anterior osteophytic formation at C5-C6, otherwise healthy appearing cervical spine" [AR at 219]; and an August 24, 2010, letter from Dr. Helland stating: "I have performed many different interventional pain

---

[4] The ALJ made no finding that plaintiff was malingering, nor does the evidence suggest plaintiff was doing so.

[5] The February 10, 2010, MRI report is purportedly an "unsigned preliminary report," which "do[es] not represent a [m]edical or [l]egal [d]ocument," but it appears that both pages of the report do in fact bear a signature. [AR at 295-96.] Regardless of whether the MRI report is a preliminary or final report, however, the Court herein only discusses the report to the extent that it notes the ALJ's reliance on the report.

procedures on [plaintiff] and feel that further interventional pain management would be ineffective for this patient." [AR at 12, 288.] The ALJ did not explain *how* this evidence undermines plaintiff's statements about the severity of his pain, and thus this reason was not sufficiently specific to discount plaintiff's subjective symptom testimony. See Reddick, 157 F.3d at 722. Moreover, it appears that the records concerning plaintiff's lower back, as well as other records not discussed by the ALJ (see infra), lend support to plaintiff's subjective symptom testimony.

In addition, once a claimant has produced objective medical evidence of an impairment or impairments, he "need not produce objective medical evidence of the pain or fatigue itself, or the severity thereof." Smolen, 80 F.3d at 1282; see Johnson v. Shalala, 60 F.3d 1428, 1433 (9th Cir. 1995) ("once an impairment is medically established, the ALJ cannot require medical support to prove the severity of the pain"). The case law holding that "[a] claimant need not produce objective medical evidence of the pain or fatigue itself, or the severity thereof," reflects the rationale that "pain testimony may establish greater limitations than can medical evidence alone." Smolen, 80 F.3d at 1282 (internal citations omitted); Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (citing Social Security Ruling[6] 96-7p). The Ninth Circuit has noted that "the nature of pain and other such symptoms" is "highly subjective and idiosyncratic" such that "[t]he amount of pain [or fatigue] caused by a given physical impairment can vary greatly from individual to individual." Smolen, 80 F.3d at 1282 (internal citations omitted). Thus, while an ALJ may consider whether a lack of objective medical evidence supports the degree of limitation, this "cannot form the sole basis for discounting pain testimony." Burch, 400 F.3d at 681. Accordingly, even if the ALJ's characterization of the medical evidence were supported by substantial evidence, he can only rely upon this rationale to discount plaintiff's subjective symptom testimony if either of his other reasons are proper. As discussed supra, they are not.

/

---

[6] Social Security Rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

Second, in light of plaintiff's medical record, the ALJ's statement that plaintiff ceased treatment with Dr. Helland in April of 2010 "for reasons unknown" is not a convincing reason to discredit plaintiff's pain testimony. After examining plaintiff on February 2, 2010, Dr. Helland administered epidural steroid injections into plaintiff's spine at L4 and L5 on February 16, 2010, March 3, 2010, and March 16, 2010. [AR at 243-55.] The March 16, 2010, steroid injection at L5 also included "adjunctive pulsed radiofrequency treatment of the dorsal root ganglion." [AR at 254.] However, on plaintiff's next visit with Dr. Helland -- on April 22, 2010 -- the doctor examined plaintiff and opined that he was "status post L [transforaminal] L5 L4 with [pulsed radiofrequency] L5 with no relief of his symptoms." [AR at 259-61.] In the "plan" portion of that treating note, Dr. Helland noted: "[Plaintiff] states that he did not receive substantial relief with the [pulsed radiofrequency] procedure of 3/16/10. [Plaintiff] will follow up with our office [as needed]." [AR at 260.] Further, as acknowledged by the ALJ, Dr. Helland's August 24, 2010, letter stated that despite having performed "many different interventional pain procedures" on plaintiff, Dr. Helland felt that "further interventional pain management would be ineffective" for plaintiff. Accordingly, it does not appear that plaintiff's discontinuing of treatment with Dr. Helland was due to noncompliance or the fact that plaintiff's symptoms were less severe than he alleged, but due to Dr. Helland's conclusion that there was no additional treatment he could provide for plaintiff. Thus, substantial evidence does not support the ALJ's rejection of plaintiff's pain testimony on the basis of his April 22, 2010, decision to cease treatment with Dr. Helland. See Moncada, 60 F.3d at 523.

Third, the ALJ discounted plaintiff's credibility because he found that "[plaintiff's] treatment providers have not opined that [he] requires greater work restrictions than those in the residual functional capacity herein." [AR at 12.] However, neither did any of plaintiff's treating physicians opine that he does *not* require greater work restrictions than those in the ALJ's RFC determination. The Court does not find the fact that there is no treating opinion in the record setting forth more limited work restrictions than those in the RFC -- when the record does not contain *any* treating opinion concerning plaintiff's limitations -- to be a convincing reason to discredit plaintiff's pain testimony. See Lingenfelter, 504 F.3d at 1036.

1 The Commissioner contends that the ALJ's rejection of plaintiff's credibility was proper
2 based on plaintiff's daily activities [JS at 15], but the statement by the ALJ that defendant relies
3 on to make this contention is that the ALJ "has considered [plaintiff's] records, subjective
4 complaints, activities of daily living, and the testimony herein and finds the residual functional
5 capacity and impairments identified above." [AR at 13.] This statement by the ALJ does *not*
6 identify plaintiff's daily activities as a reason to discount plaintiff's credibility, and "[l]ong-standing
7 principles of administrative law require [this Court] to review the ALJ's decision based on the
8 reasoning and factual findings offered by the ALJ -- not *post hoc* rationalizations that attempt to
9 intuit what the adjudicator may have been thinking." Bray v. Comm'r of Soc. Sec. Admin., 554
10 F.3d 1219, 1225-26 (9th Cir. 2009) (citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947)).

The ALJ failed to offer any legally adequate reason for discounting plaintiff's credibility.

**B.    LAY WITNESS TESTIMONY**

In determining the severity of a claimant's impairments and how the impairments affect his ability to work, lay witness testimony[7] by friends and family members who have the opportunity to observe a claimant on a daily basis "constitutes qualified evidence" that the ALJ must consider. See Sprague v. Bowen, 812 F.2d 1226, 1231-32 (9th Cir. 1987); see also Stout v. Comm'r of Social Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006); Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996); 20 C.F.R. §§ 404.1513(d)(4), (e), 416.913(d)(4), (e). Such testimony "is of particular value" because those who see a claimant every day can often tell whether he is suffering or merely malingering. See Smolen, 80 F.3d at 1289 (citing Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)). While an ALJ is not required "to discuss every witness's testimony on an individualized, witness-by-witness basis" (Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012)), he may discount the testimony of lay witnesses only for "reasons that are germane to each

---

[7] Lay witnesses include spouses, parents and other care givers, siblings, other relatives, friends, neighbors, and clergy. 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4).

witness." Dodrill, 12 F.3d at 919; Regennitter v. Comm'r of Social Sec. Admin., 166 F.3d 1294, 1298 (9th Cir. 1999).

At the administrative hearing, plaintiff's aunt, Ms. Malin [AR at 11], testified that she lives with plaintiff and sees him every day. [AR at 47.] She testified that plaintiff spends eight to ten hours out of each day sitting or lying on a bed with pillows under his back and his feet. [AR at 53, 56-57.] She stated that plaintiff cannot stand for very long, and that she can tell by his facial expressions that his back hurts more when he is standing than when he is sitting. [AR at 49, 51.] She also stated that she has encouraged plaintiff to take walks with her, and that he "tried to walk a couple of times," but his back began "hurting before [they] even [got] halfway down the road." [AR at 48.] Ms. Malin reported that a typical day for plaintiff consists of sitting, "going outside for a little while," writing, watching television, taking medication, and making doctor appointments. [AR at 48-51.] She also reported that plaintiff can only cook to the extent that he makes "a sandwich or a bowl of cereal," and occasionally "pops a pizza in" the oven. [AR at 51.] Plaintiff's aunt testified that they have a pool table outside the house, and that she knows "[i]t's hard for him [to play pool], because [she] see[s] how he stands." [AR at 50.]

The ALJ concluded that plaintiff's aunt's statements were not fully credible because: (1) she may have a familial interest in plaintiff's receipt of benefits; (2) she may have a financial interest in plaintiff's receipt of benefits; (3) she "is not a medical doctor or other qualified expert"; and (4) "some of [her] opinions ... are not supported by [plaintiff's] records." [AR at 11-12.]

The ALJ's first two reasons for discounting plaintiff's aunt's credibility were improper. An ALJ may not presume bias on the part of a claimant's family member simply because he or she is related to the claimant. See Regennitter, 166 F.3d at 1298 (ALJ improperly rejected lay witness testimony of the plaintiff's mother on the basis of presumed bias); see also Smolen, 80 F.3d at 1289 (ALJ's rejection of the plaintiff's family members' testimony on the grounds that they were "'understandably advocates, and biased' ... amounted to a wholesale dismissal of the testimony of all the witnesses as a group and therefore does not qualify as a reason germane to each individual who testified"). Similarly, the rejection of lay witness testimony on the ground that the testifying witness lives with or supports the claimant, and therefore must be biased, is not a reason

germane to that witness. See Johnson v. Astrue, 2008 WL 4553141, at *6 (C.D. Cal. Oct. 9, 2008) ("The ALJ's reasoning that witnesses who live with or support a plaintiff are not credible for reasons of bias cannot be considered legally proper, since the same rationale could be used to reject lay witness testimony in almost every case."). Indeed, to assume that the closer the living arrangement between a lay witness and a claimant, the greater the bias on behalf of that lay witness, would result in the illogical rejection of statements from those who have the greatest opportunity to observe how a claimant's impairments affect his limitations. Finally, the ALJ did not point to, nor is the Court aware of, any evidence that plaintiff's aunt supports plaintiff and expects to be reimbursed for her support if plaintiff does receive benefits. Compare Howard v. Astrue, 2009 WL 385441, at *4 (C.D. Cal. Feb. 17, 2009) ("that plaintiff's family may have a financial interest in the outcome of the case is ... not a sufficient reason to reject the statements of plaintiff's grandmother"), with Meyer v. Astrue, 2010 WL 3211938, at **3-4 (W.D. Wash. Aug. 12, 2010) (distinguishing Howard and finding that ALJ's rejection of lay testimony from the plaintiff's mother and her partner was supported by substantial evidence where the plaintiff owed them both a significant sum of money and had promised to pay them both up to $5,000 in exchange for their testimony upon approval of his disability claim). The ALJ's first two reasons for discrediting plaintiff's aunt's testimony were improper.

Third, the ALJ discounted plaintiff's aunt's testimony because she "is not a medical doctor or other qualified expert and thus cannot give a qualified opinion as to [plaintiff's] impairments or ability to perform work activity." [AR at 11-12.] The fact that Ms. Malin is not a medical professional is not a germane reason for rejecting her testimony. Lay witnesses, by definition, are not medical professionals, and the ALJ's reasoning would lead to a wholesale dismissal of all lay witnesses. "Disregard of this evidence violates the Secretary's regulation that he will consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." Dodrill, 12 F.3d at 919 (quoting Sprague, 812 F.2d at 1232 (citing 20 C.F.R. § 404.1513(e)(2))).

Finally, the ALJ found that some of Ms. Malin's opinions were not supported by the medical evidence. While inconsistency with the medical evidence may be a reason to reject lay witness testimony, substantial evidence does not support the ALJ's reliance on this reason. First, the ALJ

did not identify which of Ms. Malin's statements are unsupported by the medical evidence, or what medical evidence contradicts her statements. As such, this reason is not sufficiently specific to constitute a germane reason for rejecting her statements. See Bruce, 557 F.3d at 1115 (citing Stout, 454 F.3d at 1054) ("If an ALJ disregards the testimony of a lay witness, the ALJ must provide reasons 'that are germane to each witness' . . . [and the reasons] must be specific."). Moreover, there is at least some objective medical evidence that supports Ms. Malin's statements concerning plaintiff's functional limitations. In addition to the evidence noted supra in the discussion of plaintiff's pain testimony, the Court notes that a September 8, 2009, treating note reflects that plaintiff "went to [the emergency room]" on September 4, 2009, for his back pain [AR at 209], and a March 9, 2010, MRI indicated "[d]isk space narrowing at L4-L5." [AR at 220.] Further, Dr. Helland initially diagnosed plaintiff on February 2, 2010, with possible lumbar/sacral degenerative disc disorder; lumbar radiculopathy/neuritis left L5; and possible lumbar/sacral spondylosis/arthropathy, but by April 22, 2010, his diagnoses had become definitive. [AR at 239, 260.] Finally, also in his April 22, 2010, treating note, Dr. Helland stated that his physical examination of plaintiff was "remarkable for a limited and painful [range of motion] ... with positive [straight leg raising] bilaterally." [AR at 260.] The ALJ's general statement that the testimony of plaintiff's aunt is inconsistent with the medical evidence is unsupported and is not a valid ground to reject her testimony.

To the extent defendant contends that the ALJ's rejection of Ms. Malin's testimony was proper under Valentine v. Comm'r of Social Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009), because "Ms. Malin's testimony was largely duplicative of Plaintiff's own descriptions regarding his daily activities," that case is inapposite. [JS at 16.] In Valentine, the Ninth Circuit held that the ALJ gave an adequate explanation for rejecting the claimant's wife's testimony, which was similar to the claimant's testimony, where the ALJ stated that she was rejecting the wife's testimony for "the same reasons" she discounted the claimant's testimony. Valentine, 574 F.3d at 694. Here, the ALJ rejected Ms. Malin's testimony based on reasons he did *not* identify in discounting plaintiff's testimony, and even if he *had* rejected them based on the same reasons, all his reasons for rejecting both plaintiff's and Ms. Malin's testimony were improper, as discussed supra.

The ALJ failed to give any legally adequate reason to reject plaintiff's aunt's lay witness statements.[8]

## VI.

## **REMAND FOR AWARD OF BENEFITS**

"The decision whether to remand for additional evidence, or simply to award benefits is within the discretion of the court." Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987). Where substantial evidence does not support the Commissioner's decision, the Court may reverse and remand for payment of benefits. See id. "[W]here the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004). Specifically:

> the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Id. Where these criteria are met, remanding for further proceedings would only "unnecessarily extend [the plaintiff's] long wait for benefits." Id. at 595.

Here, as to the first criterion, the Court has determined that the ALJ failed to provide legally sufficient reasons to discredit plaintiff's pain testimony and the lay witness testimony of plaintiff's aunt.

Second, there is no need to further develop the record in this case. Plaintiff testified that he can only sit for ten to fifteen minutes at a time and can only sit for twenty to thirty minutes at a time. He further testified that the only relief he receives from his back pain is when he lies down. In addition, plaintiff's aunt testified that plaintiff cannot walk more than half a block without

---

[8] In light of the ALJ's improper rejection of plaintiff's and Ms. Malin's testimony, the Court agrees with plaintiff that the ALJ's RFC determination is not supported by substantial evidence -- plaintiff's first contention of error.

14

experiencing back pain, and that he lies on his bed with pillows under his back and feet for eight to ten hours a day.

Third, it is clear that if plaintiff's and Ms. Malin's testimony are credited, the ALJ would be required to find plaintiff disabled. The vocational expert ("VE") testified that if an individual could only sit for twenty to thirty minutes at a time before needing to stand and stretch; would need to take fifteen-minute breaks every two hours; and had the additional postural and environmental restrictions that the ALJ found plaintiff has, that individual would not be able to perform plaintiff's past relevant work. [See AR at 10, 58.] After the VE testified that an individual with those same limitations would be able to perform the jobs of check casher, telephone information clerk, and order clerk, she nevertheless stated that those jobs would be precluded if the person needed the ability to lie down at will. [See AR at 58-61.] In light of this testimony, although the VE did not directly address whether there are any jobs that exist in significant numbers in the national economy that can be performed by an individual with the precise work limitations identified by plaintiff and his aunt, it is nevertheless "clear from the record that [plaintiff] is unable to perform gainful employment in the national economy." See Benecke, 379 F.3d at 590, 595 ("in the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy, even though the vocational expert did not address the precise work limitations established by the improperly discredited testimony, remand for an immediate award of benefits is appropriate"); Andrade v. Astrue, 2008 WL 4392994, at *16 n.11 (C.D. Cal. Sept. 10, 2008) (remanding for an award of benefits under Benecke, stating: "The Court recognizes that the VE was not asked about, and did not *sua sponte* testify as to, each and every subjective symptom identified by [p]laintiff and limitation identified by [plaintiff's physician]. However, a lack of VE testimony about 'the precise limitations established by the improperly rejected evidence' is not required in order for the Court to remand for the payment of benefits.").

For these reasons, plaintiff's testimony and Ms. Malin's testimony is credited as true and the Court remands this case for the immediate award of benefits. See Benecke, 379 F.3d at 595; see also Orn v. Astrue, 495 F.3d 625, 640 (9th Cir. 2007) (remanding for award of benefits where "ALJ's reasons for rejecting the claimant's testimony [were] legally insufficient and it is clear from

1  the record that the ALJ would [have been] required to determine the claimant disabled if he had
2  credited the claimant's testimony"); <u>Varney v. Sec'y of Health & Human Servs.</u>, 859 F.2d 1396,
3  1399 (9th Cir. 2000, <u>as</u> <u>amended</u> May 4, 2000), <u>cert.</u> <u>denied</u>, 531 U.S. 1038, 121 S.Ct. 628 (2000)
4  (remanding for award of benefits where ALJ improperly discredited the plaintiff's pain testimony,
5  there were no outstanding issues needing resolution before a disability determination could be
6  made, and it was clear from the record that the ALJ would be required to find the plaintiff disabled
7  if her testimony were credited).  Remanding for further proceedings in this case would only
8  "unnecessarily extend [plaintiff's] long wait for benefits" (<u>Benecke</u>, 379 F.3d at 595), where he has
9  already waited more than three and one-half years for a disability determination. [<u>See</u> AR at 63-
10 66.]  Moreover, "[a]llowing the Commissioner to decide the issue again would create an unfair
11 'heads we win; tails, let's play again' system of disability benefits adjudication." <u>Benecke</u>, 379 F.3d
12 at 595.

### VII.
### **CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for the award of benefits is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for the award of benefits.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: July 29, 2013

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE